# In the United States Court of Federal Claims

No. 19-400L
(Filed: June 24, 2022)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ELIZABETH G. BRADLEY et al., | * |
| | * |
| Plaintiffs, | *  Notice of Attorney's Lien; Antiassignment |
| | *  Act, 31 U.S.C. § 3727; District of Columbia |
| v. | *  Law Regarding Attorney's Liens; Sovereign |
| | *  Immunity |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER STRIKING NOTICE OF ATTORNEY'S LIEN

On May 9, 2022, James H. Hulme, on behalf of ArentFox Schiff LLP ("ArentFox Schiff"), filed a notice of attorney's lien in the above-captioned case. Mr. Hulme avers that the purpose of the filing is to

> assert[] an attorney's lien against any recovery by Plaintiffs, or any award of fees and costs to the Plaintiffs[,] . . . based upon legal services performed and costs incurred by ArentFox Schiff in connection with the representation of [some of the] Plaintiffs in this action, from inception of the matter through January 31, 2019.

Notice of Attorney's Lien 1. The filing of such a lien is authorized, he contends, by United States Court of Claims ("Court of Claims") precedent and District of Columbia law. The court disagrees.[1]

---

[1] Neither plaintiffs nor defendant moved to strike Mr. Hulme's filing. However, in a footnote in its response to ArentFox Schiff's motion to intervene, defendant argues that the "notice of attorney lien should be stricken as improper, as there is no waiver of sovereign immunity supporting such a lien and it conflicts with the Anti-Assignment Act." Def.'s Resp. 4 n.3. ArentFox Schiff responds that defendant "misreads the language and spirit of the Notice of Lien . . . in asserting that ArentFox Schiff is seeking a claim against the United States" because "the lien exists upon the right of Plaintiffs and [their] current counsel to receive the proceeds in this case." ArentFox Schiff Reply 7. Notwithstanding ArentFox Schiff's characterization, its purported lien would give it an interest in any award payable to plaintiffs by defendant. See Pittman v. United States, 116 F. Supp. 576, 579-80 (Ct. Cl. 1953) (remarking that a contingency fee agreement "did attempt to create in [the attorney] an interest in the proceeds of the claim asserted on behalf of the client against the United States, as security for the payment of [the attorney's] fee" and that the attorney was seeking "to hold the Government liable" for his fee);

As Mr. Hulme observes, the Court of Claims stated in Carver v. United States that when a claimant seeks to substitute a new attorney to appear on his behalf, and the original attorney was proceeding on a contingency fee basis, "courts will assure [the original attorney] of a lien upon the ultimate judgment, and secure his immediate re-imbursement of the expenses that have been incurred."  7 Ct. Cl. 499, 500 (1871).  However, thirty-five years later, the United States Supreme Court ("Supreme Court") held in Nutt v. Knut that a contractual provision deeming the payment of attorney's fees to be a lien on the client's claim against the federal government was contrary to statute.  200 U.S. 12, 19-21 (1906).  The statute at issue generally prohibited the assignment of claims against the United States:

> All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor . . . shall be absolutely null and void unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.

Id. at 19 n.† (quoting 36 Rev. Stat. § 3477 (1878)[2]).  The Supreme Court explained that one of the purposes of this statute, commonly referred to as the Antiassignment Act,

> was to forbid anyone who was a stranger to the original transaction to come between the claimant and the government, prior to the allowance of a claim, and who, in asserting his own interest or share in the claim, pending its examination, might embarrass the conduct of the business on the part of the officers of the government.

Id. at 20.

Subsequently, in Pittman, the Court of Claims applied the holding in Nutt to a situation in which an attorney, who was working pursuant to a contingency fee agreement, asserted an attorney's lien against the amount recovered by his client from the federal government.  116 F. Supp. at 576.  Recognizing that Nutt "stands for the broad principle that any attempt to impress a lien upon the proceeds of a claim against the United States as security for the payment of an attorney's fee is within the ends to which the prohibition of [the Antiassignment Act] was aimed," id. at 580, the court held that that the lien asserted by the attorney "was a nullity," id. at 578.  See generally id. at 580 ("The Anti-Assignment statute was enacted for the purpose of preventing third parties, with whom the Government was not in privity, from acquiring an enforceable interest in a claim against it.").  The Court of Claims reached this same conclusion in

---

Lien, Black's Law Dictionary (11th ed. 2019) (defining the type of attorney's lien asserted by ArentFox Schiff—a charging lien—as "[t]he right of an attorney . . . to encumber money payable to the client . . . until the attorney's fees have been properly determined and paid").

[2]  This version of the statute was enacted in 1853.  See Act of Feb. 26, 1853, § 1, 10 Stat. 170, 170.  The current version of the statute, enacted in 1982, is substantively similar.  See 31 U.S.C. § 3727(a)-(b).

other cases.  See Kearney v. United States, 285 F.2d 797, 800 (Ct. Cl. 1961) (concluding that "a contract between an attorney and a client which gives the attorney an interest in the client's claim against the Government is exactly what the anti-assignment statute forbids"); Empire Ordinance Corp. v. United States, 128 F. Supp. 744, 744-45 (Ct. Cl. 1955) (holding that an attorney's lien authorized by the plaintiff's board of directors was "ineffectual because of the Anti-Assignment Act").

In light of the Supreme Court's decision in Nutt and the Court of Claims precedent applying the holding of Nutt—all of which is binding on this court—Mr. Hulme's reliance on Carver is not well taken.  Furthermore, Mr. Hulme has not alleged that the requirements of the current version of the Antiassignment Act have been satisfied.  See 31 U.S.C. § 3727(a)-(b) (reflecting that an assignment of a claim, or an interest in a claim, against the United States "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued").  Consequently, the notice of attorney's lien filed by Mr. Hulme violates the Antiassignment Act.

Case law from the District of Columbia supporting the use of attorney's liens in contingent fee cases does not alter this conclusion.  As an initial matter, the decisions relied upon by Mr. Hulme did not involve a claim against the federal government and, therefore, did not implicate the Antiassignment Act.  Moreover, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") has expressly concluded that the application of a state's attorney's lien statute against the United States is barred by the doctrine of sovereign immunity.  See Knight v. United States, 982 F.2d 1573, 1578 (Fed. Cir. 1993) (holding that "unless the United States has submitted itself to such state law, an attorney lien statute . . . has no force or effect against it and places no restraints on the government's payment of its obligations to another"); accord Tucker v. United States, 7 Cl. Ct. 374, 376 (1985).  Notably, Mr. Hulme was made aware of this binding Federal Circuit precedent by the Honorable Armando O. Bonilla during a March 31, 2022 status conference in another case in which ArentFox Schiff filed a notice of attorney's lien.  See Transcript of Status Conference at 10, Arnold v. United States, No. 15-1252L (Fed. Cl. Mar. 31, 2022) (citing Knight and Tucker for the proposition that the notice of attorney's lien filed in a consolidated case was "contrary to the law of this Circuit").  Thereafter, on April 8, 2022, ArentFox Schiff withdrew the notice of attorney's lien.  See Praecipe, Dawson v. United States, No. 15-1268L (Fed. Cl. Apr. 8, 2022).  Given these events, it is difficult to understand why Mr. Hulme—only six days later—chose to file a notice of attorney's lien in this case, and did so without attempting to establish that the United States has subjected itself to District of Columbia law regarding attorney's liens so as to waive its sovereign immunity.

In short, the notice of attorney's lien filed by Mr. Hulme violates the Antiassignment Act and is barred by the doctrine of sovereign immunity.  Accordingly, the court directs the clerk to **STRIKE** the notice of attorney's lien (ECF No. 83) from the docket.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge
