# In the United States Court of Federal Claims

No. 19-400

Filed: December 17, 2025

**ELIZABETH G. BRADLEY, et al.,**

    *Plaintiffs*,

v.

**THE UNITED STATES,**

    *Defendant.*

*Lindsay S.C. Brinton*, *Meghan S. Largent*, and *Michael Armstrong*, Lewis Rice LLC, St. Louis, Missouri, for Plaintiffs.

*David Harrington*, Assistant Chief, *Jennifer Sundook*, Trial Attorney, Natural Resources Section, with *Adam R.F. Gustafson*, Acting Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**[1]

    Even as the path to finality winds through appellate terrain, the law permits a measure of recompense for steps already taken. After over six years of litigation in this rails-to-trails action, two groups of claimants now move for attorneys' fees and related litigation expenses. (Pls.' Mot., ECF No. 190 (citing Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4654(c))). The first group received favorable judgments on liability and previous URA fees; the second group has received a favorable judgment—now appealed—as to liability and reached an agreement on just compensation alone.

    As to the first group, the claimants have no active claims before this Court, and their right to compensation for appellate fees exhausted thirty days after judgment was final. Because the right to additional URA fees was not properly preserved, they may not be revived at this stage. Concerning the second group, though the liability determination is currently pending before the Federal Circuit, this Court retains jurisdiction to adjudicate the pending fee application. The United States has not raised a substantive objection regarding those fees, and the Motion is

---

[1] The case was originally assigned to Senior Judge Margaret M. Sweeney and transferred to the undersigned on July 2, 2024. (ECF No. 151). References made to opinions issued prior to that date were issued by Judge Sweeney.

otherwise well-founded as to that group. Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiffs' Motion.[2] Plaintiffs shall edit and submit a renewed fee request in conformance with the direction in the conclusion of this Opinion.

## I.  Background

Plaintiffs initiated this action on March 15, 2019, alleging a Fifth Amendment taking arising from the conversion of a 20.87-mile rail corridor near Indianapolis. (Compl., ECF No. 1). The case follows the Surface Transportation Board's ("STB") issuance of a Notice of Interim Trail Use ("NITU") on December 20, 2018, which, according to Plaintiffs, resulted in the loss of "their right to unencumbered title and exclusive possession of their land." (*Id*. at 14). The case initially involved fifteen landowners but later expanded to twenty-five. (Am. Compl., ECF No. 12; Sec. Am. Compl., ECF No. 42).

The early stages of this case were marked by optimism, as the parties found common ground on discovery practices. Following the filing of the Joint Preliminary Status Report, the parties agreed to proceed through a claims book process, which ultimately lasted nearly eleven months.[3] (ECF Nos. 8, 15, 21, 33). That process revealed title issues requiring further inspection and clarification. (ECF Nos. 15, 21, 33). The parties stipulated to title matters on some claims, but disagreements remained. (ECF No. 37). At that juncture, Plaintiffs proposed bifurcating litigation to allow valuation discovery for some plaintiffs while resolving liability for others. (*Id.*) The United States, by contrast, advocated for resolving each individual plaintiff's title issue before proceeding to a collective valuation. (*Id*. at 4). A subtle precursor to the legal posture that ultimately emerged, these differing approaches marked the beginning of a series of procedural disagreements on case management.

The Court subsequently ordered summary judgment briefing on the unresolved title issues and stayed valuation discovery. (ECF No. 38). On Plaintiffs' motion, the Court widened the scope of briefing to address new information provided by a prior landowner along the corridor, which necessitated the filing of another amended complaint. (ECF Nos. 40, 42, 44). Given the title issues arising for a subset of claimants—specifically concerning the prior execution of a "release" and its potential applicability across multiple cases—Plaintiffs moved for entry of a new and enlarged scheduling order pending possible certification of related questions to the Indiana Supreme Court. (ECF No. 46). In connection with that request, Plaintiffs

---

[2] Implementation of that judgment will be stayed pursuant to RCFC 62, pending resolution of the appeal on liability.

[3] In this Court, the term "claims book" is commonly used to refer to a plaintiff's initial disclosures, which are typically provided to the United States before the RCFC 26 deadline. *See Pressly v. United States,* No. 18-1964, 2025 WL 1780947, at *1 n.5 (Fed. Cl. May 12, 2025) (listing disclosures to include deeds or other ownership documentation, tax records demonstrating ownership at the NITU date, valuation maps and schedules for the affected railroad corridor, original railroad conveyances, and maps showing the corridor's location relative to each plaintiff's property and the original conveyances).

also sought to set aside the existing summary judgment briefing schedule, expressing concern that no group should "wait on the other to catch up." (ECF No. 46 at 3). The Court stayed summary judgment briefing to allow resolution of the certification issue. (ECF No. 47).

In July of 2020, the Court denied certification to the Indiana Supreme Court, and litigation reached a consequential turning point that resulted in piecemeal proceedings across segmented plaintiff groups. (Order on Groups' Litig. Sched., ECF No. 52). These developments unfolded amid ongoing disputes involving the Indiana rail corridor, which continues to be implicated in indirectly related matters.[4] (*Id.*). The claimants in each of these cases were broken into three groups: "Group 1," plaintiffs that had claims with no outstanding liability issues and could proceed to valuation calculations ("Group 1 Plaintiffs"); "Group 2," plaintiffs that had claims that required the resolution of an essentially identical threshold title issue related to the "release" ("Group 2 Plaintiffs"); and "Group 3," plaintiffs that had claims with other threshold title issues ("Group 3 Plaintiffs"). (*See id.*); *Bradley v. United States*, 164 Fed. Cl. 236, 244 (2023), *appeal dismissed*, No. 2023-1707, 2023 WL 4930847 (Fed. Cir. Aug. 2, 2023). Group 1 Plaintiffs moved on to a collective valuation process, Group 2 was set on a path for summary judgment, and Group 3 remained in discovery to settle title determinations. (Order on Groups' Litig. Sched. at 7–10).

At the Court's direction, Plaintiffs identified the group assignment for each individual plaintiff on August 6, 2020. (ECF No. 53). The next notable movement was the Court's Summary Judgment Opinion dismissing the claims of Group 2 Plaintiffs.[5] (ECF No. 63 (withdrawn and superseded by ECF No. 78)). After that Opinion was issued on March 23, 2021,

---

[4] *See e.g., Oldham v. United States*, No. 18-1961 (consolidated with *Overlook At The Fairgrounds LP v. United States*, No. 18-1962); *Pressly v United States*, No. 18-1964 (consolidated with *Jones v. United States*, No. 19-1375); *Bradley v. United States*, No. 19-400; *Doyle v. United States*, No. 19-882; *Great Commission Church of God v. United States*, No. 22-1597; *Best Access Solutions v. United States*, No. 22-1598; *4624 N. Keystone Ave., LLC v. United States,* No. 24-2037.

[5] The Court granted summary judgment in favor of the United States, concluding that Plaintiffs had not demonstrated a compensable property interest under Indiana law, thereby warranting dismissal of ten plaintiffs. *Bradley v. United States*, 156 Fed. Cl. 640, 648 (2021). Under its analysis, the Court found that the conveyances, some via legislative charter and others lacking clear documentation, did not support Group 2 Plaintiffs' claim to a reversionary interest. *Id.* at 648–49. An identical decision was filed in three other cases. *ATS Ford Drive Inv., LLC v. United States*, 156 Fed. Cl. 397 (2021), *aff'd,* 136 F.4th 1066 (Fed. Cir. 2025); *Oldham v. United States*, 156 Fed. Cl. 159 (2021); *Pressly v. United States*, 156 Fed. Cl. 138 (2021). This decision was recently affirmed by the Federal Circuit. *ATS Ford Drive Inv., LLC v. United States*, 136 F.4th 1066 (Fed. Cir. 2025).

litigation was gradual with many fits and starts.[6] The Court first extended Group 1 expert discovery in October 2021, but ultimately vacated the order to promote settlement negotiations. (ECF Nos. 65, 72, 74). Although summary judgment briefing for Group 3 Plaintiffs was slated to begin in May 2021, the Court set aside that schedule in deference to what the parties acknowledged would be a decisive ruling in related litigation. (ECF No. 68, 72).

That fall, the parties reported a tentative agreement for just compensation as to Group 1 claims, but there was no agreement on URA fees. (ECF Nos. 74, 76, 79, 80, 81). Although the parties appeared to have reached a complete resolution on certain claims, finalization of the settlement was delayed by a Motion to Intervene filed by a law firm seeking to recover attorneys' fees.[7] (ECF Nos. 81, 84, 92, 94). In July of 2022, after intervention was denied, (ECF No. 99), Plaintiffs notified the Court that three claimants had accepted an offer of judgment that would *fully* resolve their claims. (ECF No. 103 (Acceptance from Adrian Murray, Bennett & Associates Real Estate, LLC, and Christina Nelson)). Plaintiffs also reported that they would stipulate to partial judgment for eight additional Group 1 Plaintiffs, but that URA fees would remain outstanding and require briefing. (ECF No. 104, 109).

In the interim of Group 1's will-they-won't-they journey to settlement, the Court found the United States liable for taking Group 3 Plaintiffs' property even though the original conveyances were lost. *Pressly v. United States*, 159 Fed. Cl. 159, 181 (2022). However, rather than issuing duplicative opinions, the Court stayed the related cases based on the presumption that the *Pressly* decision would apply with equal force to the Group 3 Plaintiffs in this matter. (*See* ECF No. 69 (joint motion to stay Group 3 briefing because the issues are "substantively identical to title issues that will be briefed by the parties in the related cases, *Pressly v. United States*, No. 18-1964L, *Oldham v. United States*, No. 18-1961L, and *ATS Ford Drive Investment, LLC v. United States*, No. 19-471L."); ECF No. 70 (order finding that "issues implicated by the claims of the Group 3 plaintiffs in this case are substantively identical to the issues presented by the Group 3 plaintiffs in the other three cases")). Given that decision, Plaintiffs reported that they would dismiss two claims, and that the claims of Burnett Partnership LLP, Mimir Partners LLP, & Three Feathers Realty Group LLP, Julie Turner, and Maxwell Heger would "move forward with settlement discussions as to just compensation." (ECF No. 82).

In September of 2022, Plaintiffs' counsel submitted a URA fee request for a total of $352,181.50—this amount included $280,660.04 in attorneys' fees and $71,521.45 in litigation

---

[6] The initial summary judgment opinion contained an error regarding the Indiana General Assembly's May 1852 revision of state law concerning the conveyance of real estate. (ECF No. 77). The error did not alter the Court's decision. A corrected Opinion was issued and filed *nunc pro tunc*. (ECF No. 77, 78).

[7] ArentFox Schiff moved to intervene in this matter to obtain attorneys' fees and expenses related to work completed while Plaintiffs' Counsel was employed there. (ECF Nos. 83, 84, 91, 92).

expenses.[8] (ECF No. 113). This Motion was specific to the remaining eight Group 1 Plaintiffs. (*Id.* at 10). The United States objected, arguing primarily that Plaintiffs' recovery was capped by their contingency fee agreement. (ECF No. 116). The Court granted Plaintiffs' request in part the following February. *Bradley*, 164 Fed. Cl. at 250. The Court found that recovery of attorneys' fees was not constrained by the terms of a contingency fee agreement, reaffirming that statutory fee-shifting under the URA operates independently of private contractual arrangements. *Id.* at 247–49. After deductions based on the allocation of work between this and other cases, division of fees among groups of Plaintiffs, and amendments to some hourly rates, the Court awarded $183,999.96 in fees, and an additional $21,101.92 in expenses. *Id.* at 267. Relevant to the pending Motion, the Court found that the United States' then-current approach to calculating URA fees was reasonable and would yield an allocation of $68,999.98 to the three remaining Group 3 Plaintiffs with unresolved claims. *Id.* at 259–60. However, those fees could not be awarded as just compensation had not been resolved. *Id.* at 260. Seven days after the Court's decision, the parties represented that they had reached a tentative settlement on just compensation for Group 3 and were discussing URA fees. (ECF No. 125). What appeared to signal the beginning of the end proved otherwise.

The United States appealed the Court's decision on attorney's fees but voluntarily dismissed five months later. (ECF Nos. 127, 135). On September 12, 2023, the parties reported that they reached a tentative, comprehensive settlement of all outstanding issues in this case. (ECF No. 136). Joint Status Reports continued for nine months with no final settlement approval. (ECF Nos. 138, 140, 144, 146, 148, 150). On July 2, 2024, the case was reassigned to the undersigned. (ECF No. 151). Following a status conference where the United States informed the Court that the Attorney General's authorized representative had approved the settlement, the Court ordered the parties to file a Joint Status Report within forty-eight hours explaining the posture of final settlement if dismissal had not been sought. (Dkt. Entry 7/17/2024). Two separate status reports were filed, each painting a different picture. (ECF Nos. 154, 155).

According to the United States, after the parties discussed the approval of the ten-month-old agreement, "Plaintiffs informed the United States they no longer wished to proceed with the parties' proposed agreement because they believe[d] they [were] entitled to additional reimbursement[.]" (ECF No. 154). The United States subsequently "served an offer of judgment, in accordance with [RCFC] 68 . . . , on Plaintiffs on July 18[,]" which would expire on August 1, 2024. (*Id.*). For Plaintiffs' part, they acknowledged that the United States notified them of "approval to settle the Group 3 Plaintiffs' just compensation and interest, and Plaintiffs' reasonable fees and costs," but noted it only included "the period between September 20, 2022 to August 11, 2023." (ECF No. 155). In Plaintiffs' view, this figure would "ignore the $68,999.98 already deemed reasonable by Judge Sweeney in her Order, and would ignore Plaintiffs' reasonable fees and costs incurred in the ten months" that the settlement was under review. (*Id.*).

---

[8] Plaintiffs narrowed their request to exclude fees and costs already paid under the URA for the three fully settled Plaintiffs, as well as to exclude fees and costs associated with the three unresolved Plaintiffs for whom no judgment had been entered. (ECF No. 120).

Plaintiffs indicated their willingness to settle solely on just compensation, but the United States declined. (*Id*.).

After further discussion and a second order for a Joint Status Report, (Dkt. Entry 7/23/2024), the settlement fully derailed. Because the Court's decision on liability in favor of Group 3 had been appealed in *Pressly*, the United States "communicated to Plaintiffs' counsel that it was unlikely that the United States would receive authority to settle or pay just compensation on [the remaining] claims while the appeal to the Federal Circuit [was] pending."[9] (ECF No. 156 (citing *Pressly v. United States*, CAFC No. 24-1823)). At a procedural impasse, Plaintiffs requested a full litigation schedule, and the United States requested that the Court stay the outstanding claims until the Federal Circuit decided *Pressly*.[10] (*Id.*).

Beyond the three unresolved Group 3 claims, logistical complications arose because judgment had not been entered on the Group 3 liability decision or the Group 2 dismissal. Consequently, a third status conference within four weeks was scheduled. (Dkt. Entry 8/14/2024). There, the Court noted that "one of the ways to move forward might be for the Court to issue a summary judgment decision regarding the Group 3 claims." (8/20/2025 Status Conf. Tr., 4:14–16, ECF No. 158). Both parties agreed to the Court's proposal, with the United States stating, "Your Honor, I don't think we'd have a problem with the Court entering summary judgment on these claims based on the ruling that we've already agreed applies to it." (*Id.*, 8:16–19). At the end of the hearing, the Court directed:

> [On] or by September 4th, I'd like to see a joint status report which proposes specific language to be included in . . . an interlocutory judgment for all – a partial judgment for all remaining Plaintiffs as far as liability. Obviously, I would assume . . . that the United States wants to make sure that you have language in there referencing the pending appeal and that's fine. You guys work out that language for a final judgment regarding the remaining Plaintiffs.

(*Id.*, 16:1–11). The Court indicated it would order "a pretty brisk schedule simply to address experts and reports regarding the amount of compensation of which each party would like to propose[,]" after a joint status report was filed. (*Id.*, 16:18–21). After the hearing, the Court ordered the parties to file a Joint Status Report wherein the parties would "propose language for judgment as to all remaining Plaintiffs." (Dkt. Entry 8/20/2024). However, upon receiving the joint status report, it was clear that the parties did not agree. (*See* ECF No. 159). Plaintiffs proposed to include language as to just compensation in an interlocutory judgment, and the United States persisted in its request for a stay, despite the Court's clear direction. (*Id.* (The

---

[9] It is unclear why the United States adopted this position on July 24, 2024, given that the *Pressly* appeal was filed two months earlier. *Pressly v. United States*, No. 24-1823, remains pending as of the date of this Opinion.

[10] Although the Court stayed certain cases that would be directly impacted by the *Pressly* appeal, it did so only on the joint request of the parties. No such agreement was reached in this instance.

6

United States maintaining that "following an order applying Judge Sweeney's summary judgment ruling in *Pressly* to the claims in this action – would be unwarranted, inefficient, and a waste of the parties' and Court's resources.")).

With no alternative course and absent any agreement or input from the parties, the Court entered partial judgment on liability for the Group 3 Plaintiffs to permit appellate review and formally dismissed the claims of the Group 2 Plaintiffs. (ECF No. 161 (withdrawn and replaced by ECF No. 167 for corrections)). As to the remaining Group 3 Plaintiffs, the Court directed the parties to complete expert discovery on valuation by January 16, 2025, and to submit a proposed pre-trial schedule following its conclusion. (ECF No. 167). Trial was scheduled to begin in May 2025. (ECF No. 173). The parties timely filed pre-trial submissions. (ECF Nos. 174, 175, 178, 179, 180, 181). In a shocking turn of events, the parties jointly stipulated "entry of partial judgment as to the 'Group 3' [P]laintiffs with regard to just compensation, including interest through March 24, 2025, in the amount of $114,487.47." (ECF No. 184). That filing stated that "[r]eimbursement pursuant to the URA will be negotiated or litigated separately." (*Id.*). Plaintiffs filed this motion thereafter.[11] (Pls.' Mot.).

## II.    Analysis

As Plaintiffs characterize it, two issues remain outstanding: (1) post-September 20, 2022 fees incurred by the eight Group 1 Plaintiffs, and (2) fees for three Group 3 Plaintiffs incurred throughout the entirety of litigation. (Pls.' Mot. at 3). To resolve both issues, Plaintiffs seek $471,268.79, consisting of $420,335.63 in attorneys' fees and $50,933.16 in litigation expenses. (*Id.* at 4). The United States objects to any further compensation for the eight Group 1 Plaintiffs addressed by the Court's prior fee decision. (Def.'s Resp. at 3–5, ECF No. 197). As to the three Group 3 Plaintiffs for whom liability is appealed, the United States does not object to the reasonableness of fees. (*See id.*). This silence is born from intention rather than indifference; it is the United States' position that this Court incorrectly ordered briefing on this matter, as it does not retain jurisdiction over the outstanding Group 3 URA fee claims. (*Id.* at 6–8).

The Court notes, with some regret, that much of this back-and-forth has served only to drain time and resources. From the time of transfer, the Court repeatedly called upon the parties

---

[11] Plaintiffs refer to the eight Group 1 Plaintiffs as "Group B Plaintiffs," while the United States identifies them as "Paid Plaintiffs." (Pls.' Mot. at 2 n.3; Def.'s Mot. at 3). Similarly, Plaintiffs refer to the three Group 3 Plaintiffs as "Group C Plaintiffs," whereas the United States designates them as "Appeal Plaintiffs." (Pls.' Mot. at 2 n.3; Def.'s Mot. at 6). The Court finds no reason to depart from the nomenclature previously used and will continue to refer to these individuals by their original group numbers. Accordingly, references herein to the remaining eight Group 1 Plaintiffs pertain to Plaintiffs: Elizabeth G. Bradley; Denny W. Branham & Roberta L. Anderson; David A. & Patricia A. Eads; Jeffrey A. and Jane A. Malkoff; Paul B. Schafer; D-Two Inc.; Molly McAffee & Deanna Strossner; and Holly R. Wood. References to the remaining three Group 3 Plaintiffs pertain to Plaintiffs: Mimir Partners, LLP, Three Feathers Realty Group, LLP, and Burnett Partnership, LLP (who represent a single claim); Maxwell Heger; and Julie C. Acosta née Turner.

7

to cooperate. Those requests were unheeded. While parties are neither required nor expected to agree on every issue or litigation position, they are expected to engage in good-faith collaboration. That expectation was not met, as reflected in repeated settlement failures and the parties' apparent inability to align on even foundational matters. As the Court recently iterated, piecemeal litigation of URA motions abuts against an explicit admonition of the Supreme Court: "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435–36 (1983). Despite this Court's position regarding the unfortunate development that attorney fee litigation consumes increasing volumes of litigation effort in these cases, it has fallen on deaf ears. That said, with respect to the present motion, the Court finds that Plaintiffs' request concerning the remaining eight Group 1 Plaintiffs is untimely, as those claims were not expressly excluded from judgment or properly preserved. Regarding the compensation sought for the three Group 3 Plaintiffs, the Court concludes that it retains jurisdiction over their claims for URA fees and that the United States has waived its substantive objections. Plaintiffs' Motion is therefore granted in part and denied in part.

      A.      URA Fees Overview

Congress permits the recovery of attorneys' fees in certain categories of cases. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561–62 (1986), *supplemented*, 483 U.S. 711 (1987). The URA's fee-shifting provisions exemplify this. *See* 42 U.S.C. § 4654. When a plaintiff is compensated for the taking of property in cases under the Tucker Act or Little Tucker Act, the URA provides for the recovery of "such sum as will . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees, actually incurred because of such proceeding." § 4654(c). The central inquiry focuses on the reasonableness of the fees to be awarded.

"[T]he primary purpose" of the URA is to "render[ ] property owners whole." *Haggart v. Woodley*, 809 F.3d 1336, 1359 (Fed. Cir. 2016). The URA thus requires "the Government to assume the litigation expenses of counsel" upon a successful takings claim. *Id*. at 1357. The Federal Circuit has stated that "[t]he fee-shifting provisions of the . . . URA . . . allow for recovery of attorneys' fees adequate to permit people with small takings claims to vindicate their rights with the assistance of competent counsel." *Bywaters v. United States*, 684 F.3d 1295, 1296 (Fed. Cir. 2012).

To calculate reasonable fees, the Supreme Court has consistently relied on the lodestar method in its fee-shifting jurisprudence. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar method is "the product of reasonable hours times a reasonable rate[.]" *Dague*, 505 U.S. at 559–60. That calculation does not end the inquiry. The Federal Circuit has directed this Court to consider two elements in calculating URA fees. First, the Court should consider the "amount involved and results obtained" in determining the lodestar figure. *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012). "[T]he significance of the overall" degree of success obtained by plaintiffs is "the most critical factor" in determining reasonable attorney's fees. *Arnold v. United States*, 163 Fed. Cl. 13, 39 (2022) (citing *Hensley*, 461 U.S. at 435–36). Second, the Court must apply "the forum rule" to determine the reasonable hourly rate for the relevant market. *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008).

Although there is a "strong presumption" that the lodestar figure represents a "reasonable" attorney fee, courts have discretion to adjust the lodestar figure upward or downward to account for other relevant factors. *Dague*, 505 U.S. at 565; *Del. Valley*, 478 U.S. at 564 (citing *Hensley*, 461 U.S. at 434–435); *see also* 42 U.S.C. § 4654(c) (providing for an award of attorney fees that will "in the opinion of the court" reimburse plaintiffs for reasonable expenses actually incurred). That adjustment requires a coherent, specific explanation; a court must justify its deviation with "specific evidence" demonstrating that the factors considered are not adequately subsumed within the lodestar calculation. *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984); *see also Perdue*, 559 U.S. at 558 ("It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement."); *Del. Valley*, 478 U.S. at 565 (noting that modifications of the lodestar figure should be supported by "detailed findings" by the lower court). Adjustments to the lodestar are warranted only where a pertinent factor was omitted from the initial calculation. *Bywaters*, 670 F.3d at 1229.

### B.     Expiration of Group 1's URA Claims

Regarding the remaining eight Group 1 Plaintiffs, The United States argues that Plaintiffs' claims for URA fees were resolved after dismissal of the 2023 appeal, and that any subsequent fee requests are untimely. (Def.'s Resp. at 3–5). Plaintiffs disagree, contending that URA fees constitute a separate and distinct claim, such that their case remains active notwithstanding the entry of judgment and issuance of the appellate mandate. (Pls.' Reply at 3–7, ECF No. 198). Plaintiffs assert that their entitlement to additional fees survives the closure of their underlying claims, particularly because the United States continued to negotiate on those fees. (*Id.* at 3). The Court finds for the United States.

As the Court recited above, the parties reached a tentative agreement for just compensation as to the subject Group 1 claims, but there was no agreement as to URA fees. (ECF Nos. 74, 76, 79, 80, 81). Following the full settlement of other Group 1 claims, Plaintiffs informed the Court that they would stipulate to partial judgment for the remaining eight Group 1 Plaintiffs, while reserving the issue of URA fees, which they indicated would require further briefing. (ECF No. 104, 109). In September of 2022, Plaintiffs' counsel submitted their first URA fee motion, (ECF No. 113), and were granted $183,999.96 in fees, and an additional $21,101.92 expenses, *Bradley*, 164 Fed. Cl. at 265–66. Judgment as to those fees was entered on February 3, 2023. (ECF No. 123). By timely appealing the Court's fee decision, (ECF No. 127), the United States triggered a new period for fee accrual. In August of 2023, the Federal Circuit entered its mandate dismissing the appeal in accordance with the parties' agreement. (ECF No. 135). The mandate states that "each side shall bear their own costs," (*id.*), leaving the issue of fees incurred between the United States' appeal and dismissal in the ether.

Citing RCFC 54(d)(2), the United States calculates that Plaintiffs' request for fees was due thirty days after the Circuit issued its mandate on August 2, 2023. (Def.'s Resp. at 6 (citing ECF No. 135)). In relevant part, that rule states that "unless a statute or a court order provides otherwise, the motion [for attorney's fees] must . . . be filed within 30 days after the date of final judgment[.]" RCFC 54(d)(2). The Court's procedural rules make no distinction based on the statutory authority invoked for fee entitlement.

Congress designed the URA to guarantee that plaintiffs in inverse condemnation cases receive just compensation for government-taken property by mandating the payment of their reasonable attorney fees. *See Florida Rock Industries v. United States*, 9 Cl. Ct. 285, 291 (1985) ("The Act thus entitles a plaintiff to be made whole for expenses incurred in achieving victory."). At its core, the URA's goal is to make property owners whole. *Haggart*, 809 F.3d at 1358–59. Thus, the entitlement to fee reimbursement pursuant to the URA vests with litigants rather than constituting an independent right of their attorneys. It follows that a successful takings claim yields two distinct recoveries: one for just compensation and another for attorneys' fees and costs under the URA. As the Court recently held, partial judgments may exclude URA claims, allowing those issues to proceed separately. *Pressly v. United States*, No. 18-1964, 2025 WL 1780947, at *6 (Fed. Cl. May 12, 2025). This sort of exception somewhat removes URA fees from the confines of RCFC 54(d)(2) if they are specifically carved out of a judgment. This is contemplated by RCFC 54(d)(2)'s timing requirements, which provides that a court order may enlarge time to move for attorneys' fees. As it relates to the eight Group 1 Plaintiffs, the initial judgment addressed just compensation but excepted URA fee claims, which were later decided separately. *See Bradley*, 164 Fed. Cl. at 259–260, 265. As a result, any fees incurred in connection with the United States' appeal and thereafter, including time spent negotiating those fees, would constitute a supplemental claim.

The United States argues that Plaintiffs' petition, as it applies to the eight Group 1 Plaintiffs, constitutes an impermissible attempt to relitigate claims that were fully resolved as of the Federal Circuit's mandate in August 2023. (Def.'s Resp. at 4–5). Because no supplemental motion or RCFC 60(b) Motion followed the finality of that judgment, the United States now takes the position that those claims have been conclusively severed and resolved. (*Id.* at 5). Plaintiffs respond that their Second Fee Motion as to these eight Group 1 Plaintiffs is not a "second bite at the apple," but a continuation of their entitlement to URA reimbursement that was never formally resolved. (Pls.' Reply at 4). While acknowledging that no supplemental fee request was filed between the final judgment and the present motion, Plaintiffs emphasize that they reasonably relied on the United States' repeated assurances that a comprehensive settlement was forthcoming, citing numerous Joint Status Reports from 2023 and 2024 documenting ongoing negotiations and the parties' shared representations to the Court that a global resolution was imminent. (*Id.* (citations omitted)). Plaintiffs argue that these assurances, coupled with their continued provision of updated fee documentation, explain the absence of a formal filing and support the timeliness of the present request. (*Id.* at 5–6).

The Court recently held that when URA fees are specifically carved out of a judgment, additional briefing is required and the timeline for resolution is necessarily extended. *Pressly*, No. 18-1964, 2025 WL 1780947, at *7 ("By excluding URA reimbursement from its Order for judgment, the Court necessarily ordered that fees would be addressed later."). That is not the situation here. In this case, the Court entered two separate Rule 54(b) judgments for the eight Group 1 Plaintiffs—one for just compensation and the other for URA fees. (*See* ECF Nos. 111, 123). Taken together, the two judgments resolved their claims in full. From the Court's perspective, those judgments rendered Plaintiffs whole. While the Court recognizes that supplemental fees were likely incurred after the United States' appeal, those constitute a distinct, supplemental category of compensation that must be pursued in accordance with the procedural

requirements governing fee applications. Any other application would negate the finality of RCFC 54(b) judgments that have been appealed.

Plaintiffs urge the Court to consider the equitable implications of the United States' conduct and the relevance of settlement negotiations in evaluating fee awards. (Pls.' Reply at 7 (citations omitted)). They maintain that the procedural history and documented reliance on government representations warrant consideration of the Second Fee Motion for the eight Group 1 Plaintiffs on its merits. (*Id.*). This is not persuasive. First, Plaintiffs' reliance on *Biery v. United States* is misplaced, as that decision addresses whether the subject matter of settlement negotiations may be cited in briefing on URA fee entitlement. *Biery v. United States,* Nos. 07-693 and 07-675, 2012 WL 4497656, *2–*4 (Fed. Cl. Sept. 27, 2012). There, the Court held that the Federal Rules of Evidence do not prohibit references to the subject matter of settlement negotiations in the context of URA fee briefing. *Id*. at *4. This Court agrees, recognizing that such information may serve legitimate purposes beyond proving liability or damages, such as establishing the reasonableness of fees or the scope of negotiations. However, this permissibility does not alter the procedural requirements governing fee submissions. Under RCFC 54(d)(2), any enlargement of time for filing fee claims must be authorized by *court order*. A private, unrecorded agreement between the parties does not satisfy this requirement and cannot substitute for formal judicial approval.

Because URA fees were adjudicated and subsequently appealed, any supplemental fee requests were required to be filed or formalized within thirty days of the finality of the Federal Circuit's mandate. *See* RCFC 54(d)(2)(B). Once the Circuit's mandate was issued, Plaintiffs' active claims were closed. Even if Plaintiffs relied on the United States' representations that those fees would be negotiated separately, that is, at best, a sympathetic position. Their reliance, however reasonable, does not override the jurisdictional and timing requirements imposed by statute and the Court's rules. It remained Plaintiffs' burden to formalize that understanding on the record. Absent a timely motion or stipulation, the Court cannot retroactively reopen closed claims or expand the scope of a final judgment. Thus, the Court determines that Plaintiffs did not adequately preserve the question of fees with respect to these eight Plaintiffs, and the Motion must be denied. Within thirty days of this Opinion, Plaintiffs shall submit an amended fee request omitting fees and costs specific to the eight Group 1 Plaintiffs.

  C. *Jurisdiction on Appeal*

Next, the United States contends that this Court lacks jurisdiction to consider the three Group 3 Plaintiffs' petition for attorneys' fees and costs because the underlying judgment as to liability is currently on appeal. (Def.'s Resp. at 6–8). The Court is unpersuaded. Fees are a collateral matter. The Court finds that it retains jurisdiction to consider Plaintiffs' Second Fee Motion, notwithstanding the pending appeal.

The three Group 3 Plaintiffs relevant to this motion stipulated to the entry of judgment as to just compensation only. (ECF No. 184). The Court directed judgment to be entered pursuant to RCFC 54(b), and the United States appealed that judgment on May 23, 2025. (ECF Nos. 185, 186, 189). As a threshold matter, judgments entered under RCFC 54(b) resolve fewer than all claims or parties in a given action. By definition, partial judgments dispose of certain issues

while leaving others pending for further adjudication. Here, the RCFC 54(b) judgment determined the United States' responsibility for just compensation and interest to Plaintiffs yet left unresolved the government's potential liability for attorneys' fees, costs, and expenses under the URA. (ECF No. 184). Because the URA claim remained unresolved at the time of judgment, it was not encompassed within the scope of the United States' appeal.

Plaintiffs' Second URA Motion was originally filed in June. (Pls.' Mot.). The United States immediately sought to strike the Motion, contending that the liability appeal rendered the request premature, also referencing counsel's scheduling limitations as an additional basis. (ECF No. 191). To resolve the matter, the Court held a status conference where it stated:

> I understand, certainly, that given the pending appeal, any decision regarding the URA fees would not be payable at this time until such point as the appeal is finalized. But so long as we've accommodated . . . government counsel's scheduling issues, why shouldn't we go ahead and finish briefing the URA fees now, make a determination, and then simply withhold payment or enforcement of that portion of the judgment pending appeal?

(7/29/2025 Status Conf. Tr. at 4:1–10, ECF No. 195). At that time, the United States noted that if it "prevailed in the appeal, then [it] would not be liable for a taking and the Plaintiffs would not have any entitlement to URA fees[,]" (*id.* at 4:15–18), and "if the Plaintiffs do prevail on appeal, that could result in a remand and further proceedings, and because of those further proceedings, and due to the appeal, they could claim even more fees[,]" (*id.* at 4:22–25). Ultimately, it was the United States' position that ruling on this matter would be "a waste of the parties' and the Court's time." (*Id.* at 4:20–21). Notably, the United States did not directly raise a jurisdictional challenge in its briefing or during the status conference. The Court denied the Motion to Strike but extended the briefing schedule to afford the United States additional time to file its objections. (Dkt. Entry 7/14/2025).

In its opposition to Plaintiffs' URA Motion, the United States argues that the filing of a notice of appeal divested this Court of jurisdiction over matters related to the appeal, including fee petitions that depend on the outcome of the appealed judgment. (Def.'s Resp. at 6 (citing *Gilda Indus., Inc. v. United States*, 511 F.3d 1348, 1350 (Fed. Cir. 2008)). To that end, the United States argues that because the URA authorizes reimbursement only for prevailing plaintiffs who have obtained a final, non-appealable judgment, and because the "degree of success" is central to determining reasonableness, any assessment of fees is premature. (*Id.* (citing *Hensley*, 461 U.S. at 436; *Bywaters*, 670 F.3d at 1228)). Accordingly, the United States argues that the three Group 3 Plaintiffs' petition should be denied without prejudice, as they are not yet prevailing parties and have no enforceable entitlement to URA reimbursement while the appeal remains pending. (*Id.* at 7–8). Plaintiffs respond that the Court retains jurisdiction to consider their Second Fee Motion, notwithstanding the pending appeal. (Pls.' Reply at 7–8). Plaintiffs maintain that this renewed objection is procedurally improper and reiterate their position that the Court has full authority to adjudicate the Second Fee Motion. (*Id.* at 8).

As both the Supreme Court and the Federal Circuit have recognized, the filing of a notice of appeal transfers jurisdiction to the appellate court only with respect to the aspects of the case

12

involved in the appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the [trial] court of its control over those aspects of the case involved in the appeal.") (collecting cases); *Gilda Indus.*, 511 F.3d at 1350 ("Ordinarily, the act of filing a notice of appeal confers jurisdiction on an appellate court and divests the trial court of jurisdiction over matters related to the appeal."). However, the Court retains jurisdiction to adjudicate collateral issues.

The doctrine of ancillary jurisdiction permits federal courts to adjudicate matters that, while not independently within their jurisdiction, are incidental to claims properly before the court. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994). The purpose of the doctrine is to ensure that the Court can effectively administer its proceedings and enforce its judgments. *See Cygnus Telecomms Tech., LLC v. Totalaxcess.com, Inc.*, 345 F.3d 1372, 1375 (Fed. Cir. 2003). Based on this doctrine, other opinions of this Court have found that claims for attorneys' fees are often incidental to matters on appeal and therefore remain within the Court's jurisdiction. *See e.g., Q Integrated Cos. v. United States*, No. 16–101C, 2017 WL 2859222, at *4 (Fed. Cl. July 5, 2017) ("[T]he trial court maintains jurisdiction over claims for attorneys' fees while the merits of a case are on appeal."); *Memmer v. United States*, No. 14-135L, 2017 WL 2920032, at *1 (Fed. Cl. July 7, 2017) ("[T]he [C]ourt possesses jurisdiction to consider plaintiffs' anticipated URA claim notwithstanding defendant's filing of a notice of appeal[.]"); *Greenwood v. United States*, No. 10-15L, 2018 WL 3829225, at *3 (Fed. Cl. Aug. 13, 2018) (holding a court retains ancillary jurisdiction for attorneys' fees and costs filed under the URA while an appeal is pending).

This view also aligns with fee cases concerning other statutory schemes. The Supreme Court has held that claims for attorneys' fees are "not part of the merits of the action to which the fees pertain." *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 200 (1988) (considering EAJA fees). To reach this conclusion, the Supreme Court has iterated that "an award [of attorneys' fees] does not remedy the injury giving rise to the action" and so should not stop a decision on the merits from being final despite a pending appeal. *Id.* at 200–203 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)). Stated differently, attorneys' fees claims are collateral to the merits of the underlying action. *See White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 452 n.14 (1982). Accordingly, courts generally recognize that the filing of a notice of appeal does not preclude the trial court from resolving collateral matters such as attorneys' fees. *See e.g., Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) ("[N]otwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees [in 1983 actions]."); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 817 (5th Cir. 1997) ("A district court has jurisdiction to rule on a motion for ancillary attorneys' fees even after the filing of a notice of appeal with respect to the underlying claims."); *City of Chanute v. Williams Nat. Gas Co.*, 955 F.2d 641, 658 (10th Cir. 1992) ("The law is well settled [that] the district judge retains jurisdiction over the issue of attorneys' fees even though an appeal on the merits of the case is pending."), *reversed on other grounds by Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137 (10th Cir. 1997); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) ("A district court . . . may award attorneys' fees while the court of appeals addresses the merits . . . . because there is no concurrent exercise of power on the same subject and little overlap of issues.") ("[While] a decision reversing the judgment on the merits would affect or nullify the

13

award of fees, . . . the subjects are distinct."); *Langham–Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330–31 (4th Cir. 1987) (holding that it was bound by the Supreme Court's decision in *White* to hold that the district court could award attorney's fees after the filing of a notice of appeal); *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983) ("The district court retained the power to award attorneys' fees after the notice of appeal from the decision on the merits had been filed.").

URA fee applications do not request additional substantive relief; rather, they seek reimbursement for costs and expenses incurred in prosecuting the underlying takings claim. These applications are collateral to the merits and arise only after a plaintiff has achieved some measure of success. While it is true that entitlement to URA fees is contingent upon prevailing party status, the degree of success remains a central factor in evaluating the reasonableness and scope of *any* fee award. Courts routinely assess whether the relief obtained justifies the fees claimed, considering both the nature of the litigation and the proportionality of the requested compensation. Moreover, the Court's resolution of fee issues does not interfere with the appellate court's consideration of the merits, as the two proceedings are functionally and legally distinct. Accordingly, the Court's authority to consider Plaintiffs' URA fee application remains intact, as such claims are collateral to the merits, governed by ancillary jurisdiction, and procedurally distinct from the appealed judgment.

The United States' argument that the appeal divests this Court of jurisdiction over fee-related matters, (Def.'s Resp. at 6–8), misapprehends the procedural framework governing post-judgment petitions. Neither the URA nor legal precedent requires fee motions to await appellate resolution. Further, the United States' reliance on RCFC 62.1, (*id.* at 7 n.4), is misplaced. That rule governs limited indicatives where jurisdiction is uncertain or where the Court is inclined to grant relief that it cannot formally issue due to a pending appeal. Here, the Court identifies no jurisdictional impediment and concludes that it may proceed.

The procedural history of this case speaks loudly. Its fragmented progression is attributable not to the complexity of the underlying claims, but to the parties' persistent inability to reach agreement on basic procedural matters. As the Court observed in its November 13, 2024 Order clarifying judgment, "[t]he United States efforts to prolong litigation are quickly becoming irksome." (ECF No. 166 at 2 n.2). That admonition was issued nearly a year ago, yet the pattern remains unchanged. The continued lack of coordination has impeded efficient case management and undermined the Court's ability to bring finality to issues that could have been resolved long ago.

The Court finds that it retains jurisdiction to consider Plaintiffs' Second Fee Motion, notwithstanding the pending appeal. As it relates to the three Group 3 Plaintiffs subject to this Motion, the jurisdictional basket contains all the United States' eggs. Having failed to timely assert substantive objections, the United States has waived its opportunity to do so. The Court thus turns to the merits of Plaintiffs' fee request, applying the standard of reasonableness.

14

D.     Calculations From First URA Petition

In her initial fee opinion, Judge Sweeney calculated the total attorneys' fees and litigation expenses incurred through September 19, 2022 by both Lewis Rice and ArentFox Schiff; she then allocated those totals by group, using a proportional method based on each group's share of the fourteen total Plaintiffs:

| Firm | Group | Attorneys' Fees | Expenses | Total |
|---|---|---|---|---|
| Lewis Rice | Total | $ 266,959.22 | $ 55,040.71 | $ 321,999.93 |
| | A (3/14) | $ 57,205.55 | $ 11,794.44 | $ 68,999.99 |
| | B+C (11/14) | $ 209,753.67 | $ 43,246.27 | $ 252,999.94 |
| | B (8/14) | $ 152,548.12 | $ 31,451.83 | $ 183,999.96 |
| | C (3/14) | $ 57,205.55 | $ 11,794.44 | $ 68,999.98 |
| ArentFox Schiff | Total | $ 27,938.95 | $ 9,098.41 | $ 36,928.36 |
| | A (3/14) | $ 5,965.49 | $ 1,947.73 | $ 7,913.22 |
| | B+C (11/14) | $ 21,873.46 | $ 7,141.68 | $ 29,015.14 |
| | B (8/14) | $ 15,907.97 | $ 5,193.95 | $ 21,101.92 |
| | C (3/14) | $ 5,965.49 | $ 1,947.73 | $ 7,913.22 |

(Pls.' Mot. at 10 (summarizing *Bradley*, 164 Fed. Cl. at 259–60, 265–66)). That Opinion was not preceded by a just compensation judgment for the three Group 3 Plaintiffs, and so the Court could not formally award fees.[12] However, there is no barrier to including those fees in the award now. Under the Court's prior opinion on the initial URA fee petition, Plaintiffs are entitled to the previously calculated amounts. Notably, the government has raised no substantive objection to these figures in the present briefing. Accordingly, the Court finds no basis to revisit the earlier calculations and finds that these amounts should be included in the present award.

E.     Reasonable Hours Expended

A fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "[I]n determining the amount of reasonable attorneys' fees to award under federal fee-shifting statutes, th[e] . . . court is afforded considerable discretion." *Bywaters*, 670 F.3d at 1228 (citations omitted). "[I]n determining the reasonable number of hours expended and the reasonable hourly rate, [courts] should consider the 'amount involved' . . . as well as other factors bearing on reasonableness, such as the fact that litigation of these types of disputes serves a greater purpose (vindicating constitutionally protected property rights)." *Bywaters*, 684 F.3d at 1295–96. A solely mathematical approach is improper. *Hensley*, 461 U.S. at 435 n.11 ("[Rations of recovery versus attorney fees sought] provides little aid in determining what is a reasonable fee in light of

---

[12] Those Plaintiffs are referred to as "Group C" in Plaintiffs' chart.

15

all the relevant factors." (quotations omitted)). The Court must also consider "the degree of success obtained." *Id.* at 436.

As it pertains to Plaintiffs' Second Fee Motion, counsel billed the following:

| Timekeeper | Title | Hours | Total |
|---|---|---|---|
| Lindsay S.C. Brinton | Member | 168.3 | $ 121,738.50 |
| Meghan S. Largent | Member | 29.7 | $ 21,401.00 |
| Michael Armstrong | Member | 214.6 | $ 116,315.00 |
| Lucas D. Jackson | Associate | 27.9 | $ 11,299.50 |
| Ryan T. Harding | Associate | 26.4 | $ 8,580.00 |
| T. Hunter Brown | Associate | 74.8 | $ 35,795.00 |
| Marlee L. Rowe | Associate | 46.0 | $ 15,137.50 |
| **Total Attorney Time** | | **587.7** | **$ 330,311.50** |
| Meredith Shrinivas | Paralegal | 8.8 | $ 1,919.50 |
| Courtney Ham | Paralegal | 85.0 | $ 19,249.50 |
| Amanda Welker | Paralegal | 6.5 | $ 922.50 |
| Alenah Arraya | Paralegal | 2.2 | $ 398.50 |
| Zariah D. Jones | Paralegal | 25.8 | $ 4,363.00 |
| **Total Staff Time** | | **128.3** | **$ 26,835.00** |
| **Total** | | **716.0** | **$ 357,164.50** |

(Pls.' Mot. at 16). There is no substantive objection to these hours. After reviewing the relevant records, (Pls.' Mot. Ex. A), the Court finds that the time spent on these matters was likely reasonable and necessary under the circumstances of this case. However, in their amended fee request, Plaintiffs are directed to exclude time entries solely attributable to the eight Group 1 Plaintiffs

  F.  *Reasonable Hourly Rate*

Under the lodestar method, counsel is reimbursed at the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum,* 465 U.S. at 896 n.11. The United States Court of Federal Claims is in Washington, DC; however, "that this Court sits in Washington, DC and has nationwide jurisdiction does not dictate that [those] rates apply in every case." *Arnold*, 163 Fed. Cl. at 24. That is, in a case "where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a very significant difference in compensation," the Court should determine reasonable attorney rates based on the prevailing market rates in the community where most of the legal work was performed—this is referred to as the Davis County exception. *Avera,* 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755 (D.C. Cir. 1999)) (alteration in original). The purpose of the Davis County exception is "to preclude counsel from receiving a windfall by securing compensation at a forum

rate that is significantly higher than the reasonable rate counsel could command in the local market where he or she practices law and was retained." *Bratcher v. United States*, 136 Fed. Cl. 786, 799 (2018). The Court finds that the Davis County exception applies in this case, as it has in several other rails-to-trails cases handled by St. Louis firms. *See e.g.*, *Hyatt v. United States*, 174 Fed. Cl. 643, 660 (2025); *Bradley*, 164 Fed. Cl. at 252; *Arnold*, 163 Fed. Cl. at 25; *Bratcher*, 136 Fed. Cl. at 799. The Court will calculate Plaintiffs' proper rates according to the prevailing market rates in Missouri. *See Hippely v. United States*, 173 Fed. Cl. 389, 432 (2024), *appeal dismissed*, No. 2025-1100, 2025 WL 415466 (Fed. Cir. Feb. 6, 2025); *Blum*, 465 U.S. at 895.

"[T]he burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with" the prevailing market rate in the relevant community. *Blum*, 465 U.S. at 896 (emphasis added); *see also Avera*, 515 F.3d at 1348–49. This case spanned from 2019 to 2025. During the time relevant to this petition, Plaintiffs' counsel and their firm, billed at the following rates:

| Timekeeper | Title | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|
| Lindsay S.C. Brinton | Member | $660.00 | $695.00 | $725.00 | $765.00 |
| Meghan S. Largent | Member | $660.00 | $695.00 | $725.00 | $765.00 |
| Michael Armstrong | Member | $495.00 | $525.00 | $550.00 | $575.00 |
| T. Hunter Brown | Associate | $425.00 | | $485.00 | $515.00 |
| Lucas D. Jackson | Associate | $405.00 | | | |
| Ryan T. Harding | Associate | $325.00 | | | |
| Marlee L. Rowe | Associate | | | $325.00 | $350.00 |
| Meredith Shrinivas | Paralegal | $210.00 | $220.00 | $225.00 | |
| Courtney Ham | Paralegal | $210.00 | $220.00 | $225.00 | $230.00 |
| Amanda Welker | Paralegal | $125.00 | $150.00 | | |
| Aleanah Arraya | Paralegal | | $125.00 | $250.00 | $230.00 |
| Zariah D. Jones | Paralegal | | $125.00 | $175.00 | $185.00 |

(Pls.' Mot. at 19).

Plaintiffs support their Motion with declarations from lead counsel, Lindsay Brinton; Richard B. Walsh, Jr., chairman of the Plaintiffs' counsel's firm; Emily E. Cantwell, partner of a different firm in St. Louis; and filings from *Collective Edge v. United States*, No. 20-cv-0034. (Pls.' Mot. Exs. B–E). Taken together, these documents affirm the reasonableness of counsel's requested rates. This Court has concluded that fees of comparable magnitude are reasonable in other cases. *See e.g., Hippely*, 173 Fed. Cl. at 433 (affirming pre-2021 rate of $545 and post-2021 rate of $645); *Stimson Lumber Co. v. United States*, 154 Fed. Cl. 694, 702 (2021) (affirming $595 and $495 hourly rate for partners with varying years of experience); *Hardy v. United States*, 157 Fed. Cl. 464, 473 (2021) (affirming $595 rates for partners from 2015–2020); *Haggart v. United States*, 149 Fed. Cl. 651, 666 (2020) (affirming "$175 per hour for . . . paralegals [and] between $445 and $595 per hour for partners"), *amended on reconsideration in*

*part,* 151 Fed. Cl. 58 (2020), *aff'd in part, vacated in part, remanded,* 38 F.4th 164 (Fed. Cir. 2022), *aff'd,* No. 2021-1658, 2022 WL 1419603 (Fed. Cir. May 5, 2022), and *aff'd in part, vacated in part, remanded,* 38 F.4th 164 (Fed. Cir. 2022).

The United States does not substantively object to the rates listed above and this Court recently affirmed similar rates for the same counsel. *Hyatt,* 174 Fed. Cl. at 661; *Nicholson v. United States*, 174 Fed. Cl. 664, 682 (2025). Those decisions were based on equivalent support, including affidavits and declarations from local counsel. There is no reason for the Court to now depart from that reliance. The Court finds that Plaintiffs have demonstrated the reasonableness of their requested fee rates through affidavits from experienced attorneys and persuasive legal authority. Consequently, the requested rates are "in line with those prevailing in the community for similar services by lawyers [and paralegals] of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11.

G. Costs

Under the URA, a prevailing plaintiff may be awarded "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees" incurred in connection with the proceeding. 42 U.S.C. § 4654(c). Accordingly, Plaintiffs' request the following costs associated with this litigation:

| Expense Category | Amount |
|---|---|
| Expert | $ 28,060.51 |
| Discovery | $ 8,342.61 |
| Postage | $ 602.37 |
| Transcripts | $ 125.50 |
| FOIA Request | $ 60.00 |
| Total | $ 37,190.99 |

(Pls.' Mot. at 24). Plaintiffs have provided invoices reflecting the expenses that support the requested fees. (*Id.*, Ex. G). Again, the United States does not substantively object to these figures. The Court finds the requested reimbursement reasonable to the extent it pertains solely to the three Group 3 Plaintiffs. In their amended fee request, Plaintiffs shall exclude any costs incurred on behalf of the eight Group 1 Plaintiffs.

H. Fees Associated with Reply Brief

Since May 20, 2025, Plaintiffs claim to have incurred $37,032.50 in additional attorneys' fees and $60 in costs. (Pls.' Reply at 10). While the substance of the request may be appropriate, raising new claims for URA compensation in a reply brief deprives the United States of a fair opportunity to respond—an issue that routinely complicates fee litigation. *See e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed Cir. 2006); *Goforth v. United States*, 813 F. App'x 604, 606 (Fed. Cir. 2020). Plaintiffs correctly contemplate the Court's position on this matter and request to file a third motion for fees. (Pls.' Reply at 10–12).

In their amended fee request, Plaintiffs are directed to include the request for fees associated with their Reply Brief. The United States shall respond within **twenty-eight (28) days** of that filing. The United States' Response shall be limited to the fees associated with the present Reply Brief, (ECF No. 198); the time to substantively object to the fees and costs addressed herein has passed. To ensure that limitation, the United States' Response shall not exceed ten pages. Plaintiffs shall not reply unless otherwise ordered, as continued filings risk compounding the very fees now in dispute.

### III.   Conclusion

Plaintiffs' Motion for Attorneys' Fees and Expenses, (Pls.' Mot., ECF No. 190), is hereby **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court **ORDERS** as follows:

1. Within thirty (30) days of this Opinion, on or by January 16, 2026, Plaintiffs shall submit an amended fee request omitting fees and costs associated with the eight Group 1 Plaintiffs.

2. In their amended filing, Plaintiffs shall include costs associated with their Reply Brief, (ECF No. 198), and supporting documentation.

3. Twenty-eight (28) days after Plaintiffs' amended fee request, the United States shall file its Response, not to exceed ten (10) pages.

4. The United States' Response shall be limited to fees and costs associated with Plaintiffs' Reply Brief, (ECF No. 198).

5. Unless otherwise ordered, Plaintiffs **SHALL NOT** file a Reply to the United States' Response.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge